Docket No. 13-7151

_____

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

STONE & WEBSTER, INC. and
WESTINGHOUSE ELECTRIC COMPANY LLC,

*Appellants,*

v.

GEORGIA POWER COMPANY, OGLETHORPE POWER CORPORATION,
MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA, and THE CITY OF
DALTON GEORGIA,

*Appellees.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL ACTION FILE NO. 1:12-cv-01783-CKK

_____

## APPELLANTS' BRIEF
## Oral Argument Requested

David C. Smith
D.C. Bar No. 998932
KILPATRICK TOWNSEND
  & STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC  20005-2018
Telephone:  202 508 5800
Facsimile:  202 508 5858
DCSmith@KilpatrickTownsend.com

Brian G. Corgan
D.C. Court of Appeals Bar No. 55054
KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone:  404-815-6217
Facsimile:  404.815.6555
BCorgan@KilpatrickTownsend.com

COUNSEL FOR APPELLANT
WESTINGHOUSE ELECTRIC COMPANY LLC

Appeal No. 13-7151
*Stone & Webster, Inc. v. Georgia Power Company*

Shelly L. Ewald, Esq.
D.C. Court of Appeals Bar No. 55095
WATT, TIEDER, HOFFAR &
FITZGERALD, L.L.P.
8405 Greensboro Drive, Suite 100
McLean, Virginia  22102
Telephone:  703-749-1000
Facsimile:  703-893-8029
Email:  sewald@wthf.com

COUNSEL FOR APPELLANT
STONE & WEBSTER, INC.

## <u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>

Appellants Stone & Webster, Inc. and Westinghouse Electric Company, LLC ("Appellants") hereby submit this Certificate as to Parties, Rulings, and Related Cases, stating as follows:

### A.    <u>Parties and Amici</u>

The Parties who appeared before the United States District Court, District of Columbia, Docket No. 1:12-cv-01783-CKK, are Stone & Webster, Inc. and Westinghouse Electric Company, LLC as Plaintiffs; and Georgia Power Company, Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton, Georgia, as Defendants.

The Parties before the United States Court of Appeals, District of Columbia Circuit, Docket No. 13-7151, are Stone & Webster, Inc. and Westinghouse Electric Company, LLC as Appellants; and Georgia Power Company, Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton, Georgia, as Appellees.

### B.    <u>Rulings Under Review</u>

Appellants seek review of the Memorandum Opinion and related Order entered in the United States District Court for the District of Columbia, by Judge Colleen Kollar-Kotelly, Docket No. 1:12-cv-01783-CKK, on August 30, 2013. The official citation to the Memorandum Opinion is __ F. Supp. 2d __ , 2013 WL 4616430 (D.D.C. August 30, 2013).

C.     **<u>Related Cases</u>**

The case on review has not previously been before this Court or any other court.  There are no related cases.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENTS

Pursuant to Circuit Rule 26.1, Appellant Westinghouse Electric Company LLC ("Westinghouse") hereby states that the following are parent companies of Westinghouse or other publicly-held companies that have a ten percent (10%) or greater ownership interest in Westinghouse:

> Toshiba Nuclear Energy Holdings (US) Inc. is the indirect holder of a 100% ownership in Westinghouse. Toshiba Corporation and National Atomic Company Kazatomprom are all publicly-held corporations that have at least a 10% ownership in Toshiba Nuclear Energy Holdings (US) Inc.

Westinghouse further states that its general nature and purpose is to provide fuel, services, technology, plant design, and equipment for the commercial nuclear electric power industry.

Pursuant to Circuit Rule 26.1, Appellant Stone & Webster, Inc. ("S&W") hereby states that the following are parent companies of S&W or other publicly-held companies that have a ten percent (10%) or greater ownership interest in S&W:

> S&W is owned 50% by Stone & Webster Holding One and 50% by Stone & Webster Holding Two. Both Stone & Webster Holding One and Stone & Webster Holding Two are owned 100% by The Shaw Group, Inc. Finally, the Shaw Group, Inc. is owned 100% by Chicago Bridge & Iron Company N.V. (which is a publicly traded company).

S&W further states that its general nature and purpose in the present litigation is that it provided construction services to Appellees.

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34, Appellants Westinghouse and S&W respectfully submit that oral argument would assist the Court with the disposition of this appeal.  The backdrop for this appeal is a dispute involving the design and construction of a nuclear power plant with over $900 million in dispute.  The procedural history is detailed and complex.  Westinghouse and S&W believe that oral argument will be useful to the Court in resolving questions about this procedural history and how it bears upon the issues on appeal.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ..........C-1

RULE 26.1 CORPORATE DISCLOSURE STATEMENT..................................C-3

STATEMENT REGARDING ORAL ARGUMENT ...........................................C-4

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE..................................................................................3

    A.    The Parties, the Project, and the EPC Agreement...................................3

    B.    The Regulatory Changes Complaint ......................................................6

        1.    The Contractor's $900 Million Claims ......................................6

        2.    The Mediation .............................................................................6

        3.    The Contractor's $900 Million Complaint .................................7

        4.    The Owners' Declaratory Judgment Action ...............................7

        5.    A Juxtaposition of the Parties' Complaints ................................8

            a.    The Contractor's Shield Building Claim.........................9

            b.    The Contractor's Structural Modules Claim .................10

            c.    The Contractor's LWA/COL Delay Claim ....................11

        6.    The Owners' Gratuitous Breach of Contract Count .................12

    C.    The Procedural History .......................................................................13

SUMMARY OF THE ARGUMENT .....................................................................14

ARGUMENT ..........................................................................................................16

A.  This Court Should Review the D.C. District Court's Order *De Novo* as the D.C. District Court Applied the Improper Legal Standard. ............................................................................. 16

B.  The District Court Erred in Considering Equitable Considerations that the Parties Had Contractually Waived. ............... 16

C.  The District Court Erred in Declaring that the Owners Did Not File an Anticipatory and Preemptive Declaratory Judgment Action in the Georgia District Court. .................................................. 28

D.  The District Court Erred in Refusing to Address Whether the Contractor or the Owners Were the First to File A *Bona Fide* Lawsuit. ............................................................................. 32

CONCLUSION ....................................................................... 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### Cases

*AAR Int'l, Inc. v. Nimelias Enter. S.A.,* 250 F.3d 510 (7th Cir. 2001) .................22

*Aguas Lenders Recovery Group v. Suez*, 585 F.3d 696 (2d Cir. 2009)................21

Am. South Bank v. Dale, 386 F.3d 763 (6th Cir. 2004) .........................................30

Atlantic Marine Construction Co. v. United States District for the
      Western District of Texas, 571 U.S. __, 134 S.Ct. 568 (2013) ............. 23, 24

Berenson v. Nat'l Fin. Services, LLC, 319 F. Supp. 2d 1 (D.D.C.
      2004) .......................................................................................................20

Booker v. Robert Half Int'l, 315 F. Supp. 2d 94 (D.D.C. 2004) ..........................26

District of Columbia v. Young, 39 A.3d 36 (D.C. 2012) .......................................26

Eco Solutions, LLC v. Verde Biofuels, Inc., 518 Fed. Appx. 790 (11th
      Cir. 2013) .................................................................................................26

*Federation Internationale De Football Ass'n v. Nike, Inc.*, 285 F.
      Supp. 2d 64 (D.D.C. 2003)................................................................. 17, 29

Flynt v. Life of South Ins. Co., 312 Ga. App. 430, 718 S.E.2d 343
      (2011).......................................................................................................26

*Gov't Emps. Ins. Co. v. Rivas,* 573 F. Supp. 2d 12 (D.D.C. 2008) ......................30

Gulf Oil Corp. v. Gilbert, 67 S.Ct. 839, 330 U.S. 501 (1947)..............................20

Handy v. Shaw, Bransford, Veilleux & Roth, 325 F.3d 346 (D.C. Cir.
      2003) .......................................................................................................16

*International Painters and Allied Trades Industry Pension Fund v.
      The Painting Co.*, 569 F. Supp. 2d 113 (D.D.C. 2008)................................29

*Lewis v. National Football League*, 813 F. Supp. 1 (D.D.C. 1992) .............. 17, 28

*Lockheed Martin Corp. v. L-3 Communications Corp.*, 405 F. Supp.
      2d 1381 (N.D. Ga. 2005) ...........................................................................29

*LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050 (D. C. Cir. 1992) .................................................................................16

*Mercer Management Consulting, Inc. v. Wilde, II*, 920 F. Supp. 219 (D.D.C. 1996) ......................................................................................27

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169 (11th Cir. 1982) .............................................................................17

*NEF Assignment Corp. v. Northside Village Partnership GP, LLC*, Civil Action No. 1:11-CV-4074-RWS, 2013 WL 3755606 (N.D. Ga. July 15, 2013) ...........................................................................27

*POM Wonderful LLC v. Fed. Trade Comm'n*, No. 10-1539 (RWR), 2012 WL 4475698 (D.D.C. Sept. 30, 2012)..................................30

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000) ............................20

*Safeway Stores v. Coe*, 136 F.2d 771 (D.C. Cir. 1943) ..........................................1

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746 (7th Cir. 1987)..................................................................................30

*Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.,* 196 F. Supp. 2d 21 (D.D.C. 2002) .........................................................................29

*Wash. Metro. Area Transit Auth. (WMATA) v. Ragonese*, 617 F.2d 828 (D.C. Cir. 1980) .........................................................................16

## **Statutes**

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1332.................................................................................................1

28 U.S.C. § 1404(a) ............................................................................ 19, 21, 24

Ga. Code Ann. § 13-2-3 .................................................................................26

*Authorities upon which we chiefly rely are marked with asterisks.

-iv-

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal from a dismissal without prejudice of Plaintiffs/Appellants Westinghouse Electric Company, LLC and Stone & Webster, Inc.'s (collectively the "Contractor") Complaint in the United States District Court for the District of Columbia ("D.C. District Court").  The D.C. District Court had jurisdiction over this case under 28 U.S.C. § 1332 (a) as a controversy exists between citizens of different states involving more than $75,000, exclusive of interests and costs.  The D.C. District Court entered a dismissal of the Contractor's Complaint on August 30, 2013.  Docket Entry No. 32.  The Contractor timely filed its notice of appeal on September 27, 2013.  Docket Entry No. 34.  This Court possesses appellate jurisdiction under 28 U.S.C. § 1291, as an appeal over a final order disposing of all issues.  *See Safeway Stores v. Coe*, 136 F.2d 771, 773 (D.C. Cir. 1943).

## <u>STATEMENT OF THE ISSUES</u>

The Contractor seeks review of the Memorandum Opinion and related Order entered in the United States District Court for the District of Columbia, Docket No. 12-cv-01783-CKK, by Judge Colleen Kollar-Kotelly, on August 30, 2013 ("Order").  Docket Entry Nos. 32 and 33.  The issues on appeal are as follows:

1.     Given the Parties' express contractual agreement that the D.C. District Court – and the D.C. District Court only – is a proper venue for litigation of their disputes and their express contractual waiver of challenges to that court on the

-1-

basis of *forum non-conveniens* and improper venue, whether the D.C. District Court erred, as a matter of law, by weighing equitable considerations and the relative conveniences to the Parties as the essence of its determination of which Party was the first to file its respective Complaint and finding that the lawsuit must proceed in the United States District Court for the Southern District of Georgia ("Georgia District Court") as the most convenient forum for this litigation. Further, whether the D.C. District Court erred, as a matter of law, in determining that one portion of the Parties' venue agreement that reserves "first-to-file challenges to venue" eviscerates the Parties' (a) unequivocal submission to the "non-exclusive jurisdiction of the United States District Court for the District of Columbia;" and (b) express waiver of "any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing court on the basis of forum non-conveniens or improper venue," such that (a) legal proceedings can never be brought in the D.C. District Court, the one court specified by the Parties in their agreement and (b) the Parties' unequivocal waiver of challenges to venue based on the inconvenience of the forum can never have any effect.

2.     Whether the D.C. District Court erred, as a matter of law, in finding that the Defendants/Appellees Georgia Power Company, Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton,

Georgia (collectively the "Owners") did not file an anticipatory and preemptive declaratory judgment action in the Georgia District Court.

3.      Whether the D.C. District Court erred in refusing to decide whether the lawsuit filed by the Contractor seeking coercive relief against the Owners in the D.C. District Court was first-filed relative to the lawsuit filed by the Owners seeking preemptive declaratory relief against the Contractor in the Georgia District Court, so that the Contractor's lawsuit should proceed to conclusion, and the Owners' lawsuit should be stayed.

4.      Whether the D.C. District Court erred, as a matter of law, in denying the Contractor's Motion to Enjoin the Prosecution of the Owners' Duplicative Georgia Action ("Motion to Enjoin"), Doc. 11, and in granting the Owners' Motion to Dismiss the Contractor's Complaint, Doc. 13.

## STATEMENT OF THE CASE

### A.      The Parties, the Project, and the EPC Agreement

This dispute arises out of the design and construction of two nuclear electrical generating units known as Vogtle Units 3 and 4 located at the Vogtle Electric Generating Plant in Waynesboro, Georgia (the "Project"). Westinghouse and S&W are the Contractor for the engineering, procurement and construction of the Project. Georgia Power Company, Oglethorpe Power Corporation, Municipal Electric Authority of Georgia, and the City of Dalton, Georgia, are the Owners of

the Project.  The Parties entered into an engineering, procurement and construction agreement (the "EPC Agreement" or "Agreement") with respect to the Project effective April 8, 2008.  Motion to Enjoin, Doc. 11, Ex. 5, p. 1.

The EPC Agreement sets forth a dispute resolution mechanism.  After submitting a written notice of claim and having the Parties' Authorized Representatives meet, Article 27.4(a) of the EPC Agreement calls for mediation of all claims between the Parties and provides that if the mediation has not concluded within sixty (60) Days after its commencement, then either Party has the right to proceed with litigation:

**ARTICLE 27**

**DISPUTE RESOLUTION**

\*      \*      \*

27.4  <u>Mediation</u>.

(a)  Any Claim not resolved pursuant to Section 27.3 shall be referred to mediation which, unless the Parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Procedures of the AAA in effect at the time of the mediation.  If the mediation has not concluded within sixty (60) Days after its commencement, then, as applicable:

(i)  with respect to a Claim that exceeds the Claim Threshold Amount [$25 million], either Party shall have the right to proceed to litigation of such Claim in a court of competent jurisdiction, in accordance with Section 34.3 ….

*See Id.* at Ex. 6, pp. 1-2.

-4-

Pursuant to Article 34 of the EPC Agreement, the Parties agreed that venue for litigation of disputes would be in the United States District Court for the District of Columbia, but that such venue was "non-exclusive" and that neither Party waived "first-to-file" challenges.   In that regard, the EPC Agreement provides:

## ARTICLE 34

## APPLICABLE LAW; WAIVER OF JURY TRIAL; VENUE

*          *          *

34.3   <u>Venue</u>.   The Parties agree to the non-exclusive jurisdiction of the United States District Court for the District of Columbia for any legal proceedings that may be brought by a Party arising out of or in connection with this Agreement or for recognition or enforcement of any judgment.   Each Party accepts, generally and unconditionally, the jurisdiction of the aforesaid court for legal proceedings arising out of or in connection with this Agreement.   Each Party hereby waives any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing court on the basis of forum non-conveniens or improper venue.  For the avoidance of doubt, the Parties do not, by this Section 34.3, waive any first-to-file challenges to venue.

*See Id.* at Ex. 7.

**B.     The Regulatory Changes Complaint**

**1.     The Contractor's $900 Million Claims**

Disputes between the Parties arose that involve the Contractor's claims related to the design and construction of certain components of the Project and delay claims related to the Owners' failure to obtain certain required authorizations and licenses.  These claims are known by the Parties as the "Regulatory Changes." In accordance with the dispute resolution clause of the EPC Agreement, on June 27, 2012, the Contractor submitted three claims against the Owners by way of Change Dispute Notices, seeking monetary and Project Schedule relief for additional work, delays, changes, and uncontrollable circumstances due to the Regulatory Changes.  *Id.* at Ex. 5, p. 2.  The Parties were unable to resolve the disputes through negotiations, and the Contractor, pursuant to Article 27.4 of the EPC Agreement, commenced mediation of the Regulatory Changes by filing a Request for Mediation with the American Arbitration Association on August 24, 2012.  *Id.* at p. 3.

**2.     The Mediation**

Because they were acutely aware of the first to file issue presented by Section 34.3 of the EPC Agreement and having been engaged in a prior dispute over when the mediation commenced and concluded for purposes of initiating litigation in accordance with Section 27.4(a), the Parties agreed that the mediation of the Regulatory Changes would conclude at a date and time certain and that no

lawsuit could be initiated before then.  Thus, although the mediation session was held on October 11-12, 2012, the Parties agreed that if no resolution was reached, the mediation would "conclude" on November 1, 2012, at 8:00 p.m.  Reply in Support of Motion to Enjoin, Doc. 26, p. 7; Motion to Enjoin, Doc. 11, Ex. 8.

### 3.    The Contractor's $900 Million Complaint

After the mediation failed to resolve the Contractor's claims against the Owners, the Contractor filed its Complaint against the Owners regarding the Regulatory Changes seeking coercive relief in excess of $900 million for breach of contract.  The Contractor utilized the electronic filing system for the D.C. District Court as mandated by local rule.  *See generally* Complaint, Doc. 1.  The Contractor submitted its Complaint into the electronic filing system at precisely 8:00:00 p.m. on November 1, 2012, according to the U.S. Naval Observatory Master Clock.  *See* Motion to Enjoin, Doc. 11, Ex. 9, p. 2 and Ex. 10, pp. 1-2.  The transaction log generated by the electronic filing system returned a confirmation of filing at 8:00:01 p.m. on November 1, 2012, thus confirming that the Contractor filed its Complaint with the D.C. District Court within the one second between 8:00:00 and 8:00:01 p.m. on November 1, 2012.  *Id.* at Ex. 11.

### 4.    The Owners' Declaratory Judgment Action

On November 1, 2012, the Owners filed a complaint in the Georgia District Court, seeking declaratory relief against the Contractor regarding the Regulatory

Changes. *See Id.* at Ex. 1. The Owners allege that they made this filing by "transferring possession of [the original Complaint, Civil Cover Sheet, Summons, Disclosure Statement Pursuant to S.D. Ga. L.R. 7.1.1 and Certificate of Counsel Refiled or Related Cases S.D. Ga. L.R. 3.1] to the Deputy Clerk . . . ." *Id.* at Ex. 2, p. 32. The Owners declared that they made this transfer to the Deputy Clerk when their attorney's iPhone indicated the time to be 8:00:00 p.m. *Id.* The Deputy Clerk then apparently hand-stamped the complaint and handwrote the date and time as November 1, 2012, 8:00 p.m. *See Id.* at Ex. 1.

### 5.      A Juxtaposition of the Parties' Complaints

The Contractor's Complaint in the D.C. District Court seeks affirmative recovery of over $900 Million. The Contractor is the true plaintiff. The Contractor has incurred substantial damages due to the Owners' mandate that it proceed with the performance of additional and changed work for which the Owners are contractually obligated to pay the Contractor. The Contractor is performing the changed work, incurring the costs to do so, and suffering substantial monetary damages due to the Owners' breaches of contract.

In contrast, the Owners' Complaint in the Georgia District Court is a derivative action, seeking primarily declaratory relief and conceding that it is based solely upon the Regulatory Changes submitted by the Contractor. *Id.*, Ex. 1. The Owners acknowledge that "[w]hen these dispute resolution procedures failed to

resolve the [Contractor's] Change Disputes and the mediation concluded unsuccessfully, the Owners filed this action with respect to the Change Disputes." *Id.*, Ex. 1, ¶ 29.

In their declaratory judgment count in the Georgia District Court, the Owners state that they are:

> "entitled to a Declaratory Judgment under 28 U.S.C. § 2201 and the Federal Rules of Civil Procedure declaring their rights concerning the Change Disputes. . . . A judicial declaration of the parties' rights under the EPC Agreement, specifically as they relate to the Change Disputes, is necessary to preserve Owners' rights under the EPC Agreement and to allow the parties to appropriately plan with respect to issues that could substantially impact the future of the Project, including potential extensions to the Project Schedule and the date of its completion, and potential additional payments arising from increases in the Contract Price."

*Id.,* ¶¶ 58-59.

### a.     The Contractor's Shield Building Claim

In its Complaint filed in the D.C. District Court, the Contractor seeks in excess of $600 Million in damages for changes to the Units' Shield Buildings for which the Owners have refused to compensate it. In their Complaint filed in the Georgia District Court, the Owners seek the following declaratory relief:

**B.**      **The Change Disputes**

&ast;          &ast;          &ast;

**C.**      **Change Dispute # 1 – The Shield Building**

37.      Because the Owners dispute and do not
agree to the Change Order sought by [the Contractor]
relating to the Shield Building – which could adversely
affect the Project by i) significantly extending the Project
Schedule and Completion Date and (ii) requiring
significant additional and future payments by Owner as a
result of an increase to the Contract Price – an actual
controversy exists that warrants the declaratory relief
sought in this action.

*Id.*, ¶ 37.

b.      **The Contractor's Structural Modules Claim**

In the Contractor's Complaint in the D.C. District Court, it seeks in excess
of $74 Million in damages for changes to the Units' Structural Modules for which
the Owners have refused to compensate it.   In their Complaint in the Georgia
District Court, the Owners seek the following declaratory relief:

**B.**      **The Change Disputes**

&ast;          &ast;          &ast;

**D.**      **Change Dispute #2 – The Structural Modules**

&ast;          &ast;          &ast;

46.      Because Owners dispute and do not agree
with the Change Order sought by [the Contractor]
relating to the structural modules' design – which could
impact the project by (i) extending the Project Schedule
and Completion Date and (ii) requiring significant

-10-

> additional and future payments by Owner as a result of
> an increase to the Contract Price – an actual controversy
> exists that warrants the declaratory relief sought in this
> action.

*Id.*, ¶ 46.

### c.      The Contractor's LWA/COL Delay Claim

In its Complaint filed in the D.C. District Court, the Contractor seeks

damages in excess of $244 Million for changes due to Defendants' failure to have

issued by the Nuclear Regulatory Commission a Limited Work Authorization

("LWA") and a timely Combined Operating License ("COL"). In the Owners'

Complaint filed in the Georgia District Court, the Owners seek the following relief:

### B.      The Change Disputes

\*          \*          \*

### E.      Change Dispute #3 – The LWA/COL Delay

\*          \*          \*

> 52.  Because Owners dispute and do not agree with
> the Change Order sought by [the Contractor] relating to
> the alleged LWA/COL delay – which could impact the
> project by (i) significantly extending the Project Schedule
> and Completion Date and (ii) requiring significant
> additional and future payments by Owner as a result of
> an increase to the Contract Price – an actual controversy
> exists that warrants the declaratory relief sought in this
> action.

*Id.*, ¶ 52.

In summary, the Owners reveal the essence of their Complaint filed in the Georgia District Court, and its anticipatory and preemptive purpose to divest the Contractor of the venue it selected and to which the Parties agreed, as follows:

> 60.   For the reasons set forth above, Owners dispute and do not agree to the Change Order requests that are the subject of the Change Disputes. Hence, Owners seek a judgment declaring that Defendants are not entitled to Change Orders for each of the Change Disputes.

*Id.*, ¶ 60.

The foregoing unequivocally establishes that the Owners' Complaint in the Georgia District Court was filed solely as an anticipatory and preemptive effort to divest the Contractor, the true plaintiff, of its chosen forum – the only forum identified in the Parties' EPC Agreement.

### 6.   The Owners' Gratuitous Breach of Contract Count

In an effort to enhance their declaratory judgment action, the Owners did include an illusory "breach of contract" claim regarding their payment of 50% of the disputed invoices notwithstanding the fact that, under Article 8.5(b) of the EPC Agreement, they are required to make this payment and, thus, no breach of contract occurred. *See* Motion to Enjoin, Doc. 11, Ex. 12. The Owners did not present written notice of this claim to the Contractor, nor did they commence mediation of this claim, each of which is a prerequisite to filing suit under Article 27.4 of the EPC Agreement. *Id.* at Ex. 5, p. 3. The Owners thus did not abide by the dispute

-12-

resolution procedures required by Article 27 of the EPC Agreement for their purported breach of contract claim against the Contractor.

## C.    The Procedural History

The Contractor effected service of its Complaint on November 2, 2012, requiring the Owners to file a responsive pleading in the D.C. District Court by November 23, 2012. *See Id.* at Ex. 3. The Owners did not serve the Contractor with the Georgia District Court Complaint until November 6, 2012, requiring the Contractor to file a responsive pleading by November 27, 2012. *See Id.* at Ex. 4. On November 14, 2012, the Contractor filed a motion in the D.C. District Court seeking to enjoin the Owners' improper prosecution of their duplicative action seeking declaratory relief in the Georgia District Court. *See* Motion to Enjoin, Doc. 11. On November 23, 2012, the Owners filed a motion to dismiss the Contractor's Complaint in the D.C. District Court. *See* Motion to Dismiss, Doc. 13.

On August 30, 2013, the D.C. District Court issued its Order denying the Contractor's Motion to Enjoin, granting the Owners' Motion to Dismiss, and dismissing the Contractor's Complaint without prejudice. *See* Order, Doc. 32. In the Order and the Memorandum Opinion, Doc. 33, the court did not reach the issue of which complaint was first-filed, but instead rested its decision on the determination that, notwithstanding the Parties' express submission, and waiver of

-13-

challenges, to the jurisdiction of the D. C. District Court "on the basis of forum non-conveniens or improper venue," "equitable considerations" weigh in favor of resolving the dispute in the Georgia District Court.

## SUMMARY OF THE ARGUMENT

The D.C. District Court erred in denying the Contractor's Motion to Enjoin and in granting the Owners' Motion to Dismiss. The D.C. District Court should have found that the Parties contractually agreed that the D.C. District Court was a proper venue and that the Parties waived challenges to the D.C. District Court on the basis of improper venue or *forum non-conveniens*. The only avenue by which the Parties could challenge venue in the D.C. District Court was a first to file challenge, pursuant to which the court in which the first *bona fide* action was filed should retain jurisdiction over the matter.

Under a first to file analysis, it is clear that the Contractor filed its coercive action in the D.C. District Court before the Owners filed their duplicative declaratory action in the Georgia District Court. Rather than deciding the issue of which Party was the first to file its respective action, the D.C. District Court instead based its decision to dismiss the Contractor's Complaint on a balance of the convenience of the Parties, considerations that the Parties had expressly waived in the EPC Agreement. After doing so, the D.C. District Court concluded that the Georgia District Court was the most convenient court to hear the dispute.

-14-

By basing its decision on considerations of the convenience of the Parties, the D.C. District Court applied an improper legal standard in a first to file analysis and incorrectly interpreted the EPC Agreement. The D.C. District Court abrogated the Parties' contractual venue provision, disregarded their express and unequivocal waivers of challenges to improper venue and ignored the clearly preemptive nature of the Owners' filing. The clear implication of the D.C. District Court's decision is that the Contractor can never have its disputes heard in the D.C. District Court, as the Owners would always be able to file a subsequent lawsuit in the Georgia District Court and argue that the Georgia District Court is a more convenient forum. Such a determination neither effects the intentions of the Parties nor gives effect to each of the express provisions of Section 34.3 of the EPC Agreement.

Rather than basing its decision on equitable considerations that the Parties had waived, the D.C. District Court should have considered which action was first-filed, along with other special circumstances, namely that the Owners filed a declaratory judgment action in the Georgia District Court for the sole purpose of defeating the Contractor's choice of forum – the contractually specified forum. Courts that have addressed such special circumstances generally find that the party who filed the first coercive action, rather than the party who filed a declaratory judgment action, is the first to file. The D.C. District Court should have found that based on this fact alone, it should retain jurisdiction over the Contractor's lawsuit.

-15-

This Court should reverse the Order of the D.C. District Court.

## ARGUMENT

**A.   This Court Should Review the D.C. District Court's Order *De Novo* as the D.C. District Court Applied the Improper Legal Standard.**

Although generally a district court's decision to decline jurisdiction in favor of an ongoing proceeding is reviewed for abuse of discretion, whether the district court applied the proper legal standard in exercising that discretion is a question of law reviewed *de novo*. *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003); *Wash. Metro. Area Transit Auth. (WMATA) v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980). Furthermore, by basing its decision on equitable factors that the Parties had contractually waived, the D.C. District Court incorrectly interpreted the EPC Agreement.  "Interpretation of the plain language of a contract is a question of law subject to *de novo* review" by the Court of Appeals.  *LTV Corp. v. Gulf States Steel, Inc. of Alabama*, 969 F.2d 1050, 1055 (D. C. Cir. 1992).

**B.   The District Court Erred in Considering Equitable Considerations that the Parties Had Contractually Waived.**

As provided above, the Parties agreed in Article 34.3 of the EPC Agreement that the D.C. District Court was a proper venue for any legal proceedings between the Parties arising out of or in connection with the EPC Agreement.  The Parties agreed to accept "generally and unconditionally" the jurisdiction of the D.C. District Court for any legal proceedings arising out of or in connection with the

-16-

EPC Agreement.  Each Party waived any right to stay or dismiss any action or proceeding under or in connection with the EPC Agreement brought before the D.C. District Court – and that court only – on the basis of *forum non-conveniens* or improper venue.  The Parties reserved only "first to file" challenges with respect to the propriety of venue in the D.C. District Court.

Under the "first to file" rule, "the court initially seized of a controversy should be the one to decide the case."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).  The rule "typically requires the court of the second-filed case to dismiss or transfer the action before it in favor of comparable litigation previously filed in another jurisdiction."  *Lewis v. National Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992); *see also Federation Internationale De Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 67 (D.D.C. 2003) (noting that the so-called first to file rule generally dictates that the first-filed suit be given priority and be allowed to continue).

Therefore, the critical and sole issue before the D.C. District Court was whether the Contractor was the first to file a *bona fide* Complaint in the D.C. District Court, or whether the Owners were the first to file a *bona fide* Complaint in the Georgia District Court.  If the D.C. District Court determined that the Contractor was the first to file its Complaint, the D.C. District Court should have retained jurisdiction over the action and enjoined the Owners from pursuing their

duplicative action in the Georgia District Court.   This conclusion is mandated by the express terms of Section 34.3 of the EPC Agreement wherein the Parties waived their right to challenge venue in the D.C. District Court – and in that court only – "on the basis of forum non-conveniens or improper venue."

The D.C. District Court refused to consider which Party was the first to file its respective Complaint.   Instead, the court based its decision on "equitable considerations," factors and challenges the Parties had contractually waived. Pursuant to Article 34.3 of the EPC Agreement, the Parties waived "any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing court [the D.C. District Court] on the basis of forum non-conveniens or improper venue."   Despite this waiver, the D.C. District Court considered which forum – the D.C. District Court or the Georgia District Court – was most convenient and considered the "local interest in having localized controversies decided at home."   Memorandum Opinion, Doc. 33, at pp. 6-7.   The D.C. District Court found that "proceeding in the Southern District of Georgia would be significantly more convenient and efficient for both the federal judiciary and the parties and would additionally promote the 'local interest in having localized controversies decided at home.'"   *Id.*, at p. 8.

The D.C. District Court found that the following "equitable considerations" favor resolution of the Parties' dispute in the Georgia District Court:

- "[T]rying this case in the Southern District of Georgia would increase judicial efficiency for the simple reason that the Southern District of Georgia possesses greater familiarity with the laws applicable to the instant dispute, as the EPC Agreement is governed by Georgia law." *Id.*, at p. 8.

- "[T]rying the merits of the parties' causes of action in the Southern District of Georgia would permit easier access to relevant evidence." *Id.* at p. 9.

- "[T]he ties between the parties' dispute and the Southern District of Georgia are numerous and undeniable." *Id.*, at p. 10.

- "[T]he Project is a local project with significant local effects – a consideration counseling strongly in favor of resolution of the instant dispute by the Southern District of Georgia." *Id.*, at p. 10.

- "[O]ther than the fact that the parties submitted to the non-exclusive jurisdiction of this Court, the District of Columbia has no material ties to the present dispute." *Id.*, at p. 11.

The analysis the D.C. District Court employed is in fact a *forum non-conveniens* analysis – an analysis and challenge that the Parties explicitly waived in the EPC Agreement. If venue is proper in a federal district court, but another federal district court would be a more convenient forum, the case may be dismissed, or may be transferred pursuant to 28 U.S.C. § 1404(a), under a *forum non-conveniens* challenge. In such a challenge, a court considers both private and public interests. The private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually

be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.  The public interest considerations include:  (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home.  *Berenson v. Nat'l Fin. Services, LLC*, 319 F. Supp. 2d 1, 2-3 (D.D.C. 2004); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 51-52 (D.D.C. 2000); *Gulf Oil Corp. v. Gilbert*, 67 S.Ct. 839, 843, 330 U.S. 501, 508 (1947).  It is clear based upon a comparison of the "equitable considerations" weighed by the D.C. District Court and the "equitable considerations" in a *forum non-conveniens* analysis that the D.C. District Court in fact employed a *forum non-conveniens* analysis, not a first to file analysis.  Because the Parties expressly waived challenges to the propriety of venue in the D.C. District Court based on such *forum non-conveniens* factors, the D.C. District Court erred in considering and relying upon them.

The Owners argued in the court below, and the D.C. District Court was apparently persuaded, that they could present "equitable considerations" and the Court could consider them because such "equitable considerations" are "part and parcel" of a first to file challenge, which the Parties did not waive in Article 34.3 of the EPC Agreement.  Memorandum Opinion, Doc. 33, at p. 12.  However, the "equitable considerations" brought to the D.C. District Court's attention by the

Owners, as listed above, were those of convenience, identical to those evaluated under a *forum non-conveniens* analysis pursuant to 28 U.S.C. § 1404(a). The Owners expressly waived "any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the foregoing [D.C. District] Court on the basis of *forum non-conveniens* or improper venue." Motion to Enjoin, Doc. 11 at Ex. 7. The waiver is unqualified. Although the Parties did not waive any first to file challenges to venue, the Owners cannot advance the purported convenience of the Georgia District Court by bootstrapping such challenges or considerations under the guise of a first to file challenge.

Significantly, the Owners agreed to venue in the D.C. District Court "generally and unconditionally . . . for legal proceedings arising out of or in connection with this Agreement." Although Section 34.3 provides that this venue choice is permissive, it does not alter the fact that the Parties explicitly acknowledged that the D.C. District Court is a forum contractually insulated from attack from challenges of improper or inconvenient venue. Indeed, when a permissive forum selection clause is coupled with a waiver of any *forum non-conveniens* challenges, such as is the case here, "[t]he combination of these clauses amounts to a mandatory forum selection clause, at least where the plaintiff chooses the designated forum." *Aguas Lenders Recovery Group v. Suez*, 585 F.3d 696, 700 (2d Cir. 2009). *See also AAR Int'l, Inc. v. Nimelias Enter. S.A.,* 250 F.3d 510, 525-

6 (7th Cir. 2001) ("[I]n this case we have more than merely a permissive forum selection clause; we have such a clause plus unambiguous language providing that the lessee shall not object to venue . . . on the ground . . . [of] inconvenient forum. . . . [W]e conclude that the stricter standard announced in *Bremen* . . . should control . . . .").

It is common sense that "by agreeing to a mandatory forum selection agreement, a party waives objections to venue in the chosen forum on the basis of cost or inconvenience to itself." *AAR Int'l,* 250 F.3d at 526 (internal citation omitted). The court in *AAR International* noted the forum selection clause and the waiver provisions at issue were part of a lease that was freely negotiated between sophisticated international corporations. The court stated, "[w]hatever inconvenience VH would suffer by being forced to litigate in a court in Illinois was foreseeable at the time that it agreed to waive objections based on such factors." *Id.* at 526. It is the same with the Owners here. Both Parties appreciated fully the purported convenience in, and ties to, the Georgia District Court when they entered into the EPC Agreement and submitted to the jurisdiction of the D.C. District Court as the only specifically designated venue to which there would be no challenges asserted "on the basis of forum non-conveniens or improper venue."

The United States Supreme Court recently reiterated the importance of enforcing forum selection clauses. In *Atlantic Marine Construction Co. v. United*

-22-

*States District for the Western District of Texas*, 571 U.S. __, 134 S.Ct. 568 (2013), the plaintiff filed suit in the United States District Court for the Western District of Texas in contravention of the parties' mandatory forum selection clause. That clause specified that all disputes be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division. The district court refused to transfer the case, finding that the convenience of the parties dictated that the dispute should remain in the Western District of Texas.

The Supreme Court reversed, stating that "[w]hen the parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding the parties to their bargain."  *Id.* at 583 (internal quotations omitted). Therefore, when the parties have agreed to a valid forum-selection clause, "a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances **<u>unrelated to the convenience of the parties</u>** should a 1404(a) motion be denied."  *Id.* at 581 (emphasis added). A

district court should not consider arguments about the parties' private interests, such as relative ease to access of proof, availability of compulsory process for attendance of unwilling witnesses, possibility of view of premises, and all other practical problems that make trial of a case easy, expeditious and inexpensive, because when parties agree to a forum-selection clause, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. Accordingly, the district court must deem the private interest factors to weigh entirely in favor of the preselected forum because whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum they agreed to was clearly foreseeable at the time of contracting. *Id.*

The Owners asked the D.C. District Court to ignore what is considered by the courts to equate to a mandatory forum selection clause and an explicit waiver of *forum non-conveniens* challenges and engage in an analysis of balancing the convenience of the Parties and witnesses, in the interests of justice under 28 U.S.C. § 1404(a). However, that analysis was undertaken by the Parties during contract negotiations and led to the agreement regarding venue memorialized in Section 34.3. When the Owners entered into the EPC Agreement with the Contractor and consented to the jurisdiction of the D.C. District Court "for any legal proceedings that may be brought by a Party arising out of or in connection with this

Agreement" and "waive[d] any right to stay or dismiss any action or proceeding in connection with this Agreement brought before the [D.C. District] court on the basis of forum non-conveniens or improper venue," the Owners fully appreciated that Georgia law would govern, the Project would be constructed in Georgia and there was a substantial likelihood that the Owners' potential witnesses would be located in Georgia. As important, Section 34.3 is clear that the agreements and waivers contained therein apply to both Parties and relate to "any legal proceedings that may be brought by a Party ..." including the Owners. It is inconceivable that the Owners would contend that the "equitable considerations" it asked that the D.C. District Court evaluate in order to avoid its agreement were not known to the Owners when they unqualifiedly agreed to venue in the D.C. District Court and waived the very challenges they then asserted in the D.C. District Court. Indeed, Section 34.3 provides that the Owners themselves are a Party that is entitled to initiate and maintain an action in the D.C. District Court. The Owners' effort to vitiate their unqualified agreements regarding venue, while seeking to unilaterally reap the benefits, is wholly unsupportable.

The logical extension of the D.C. District Court's opinion would eviscerate the express venue provision to which the Parties agreed and the unqualified and unequivocal waiver of challenges to venue in the D.C. District Court based on improper venue or *forum non-conveniens*. Any time the Contractor chooses to file

-25-

an action in the D.C. District Court, the Owners could file a duplicative action in another court and then, under the guise of a first to file challenge, present equitable factors – identical to those in a *forum non-conveniens* challenge – for the Court to consider in determining which court is more convenient as "part and parcel" of the first to file analysis.   Stated differently, pursuant to the D.C. District Court's Opinion and its reasoning, the Contractor could never proceed with a lawsuit in the D.C. District Court in that the equitable considerations analyzed by the D.C. District Court would always mitigate in favor of the Georgia District Court.

Thus, the D.C. District Court ignored two of the most basic principles of contract interpretation.   First, the court is required to interpret a contract so as to effect the intent of the parties.  *Booker v. Robert Half Int'l*, 315 F. Supp. 2d 94, 105 (D.D.C. 2004) ("A cardinal rule of contract interpretation is that wherever possible the parties' intent shall be given full effect."); *Eco Solutions, LLC v. Verde Biofuels, Inc.*, 518 Fed. Appx. 790, 791-92 (11th Cir. 2013) ("[T]he cardinal rule of contract construction is to determine the intent of the parties.") (quoting *Flynt v. Life of South Ins. Co.*, 312 Ga. App. 430, 718 S.E.2d 343, 347 (2011); Ga. Code Ann. § 13-2-3).   Second, the court is to interpret a contract so as to give meaning to each of its provisions, rather than render any provision nugatory.  *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012) ("we must strive to give 'reasonable effect to all its parts' and eschew an interpretation that would render

-26-

part of it meaningless or incompatible with the contract as a whole"); *Mercer Management Consulting, Inc. v. Wilde, II*, 920 F. Supp. 219, 235 (D.D.C. 1996) ("A contract is construed as a whole, giving effect to all of the contract's provisions and avoiding a construction which would render one of those provisions meaningless."); *NEF Assignment Corp. v. Northside Village Partnership GP, LLC*, Civil Action No. 1:11-CV-4074-RWS, 2013 WL 3755606, *4 (N.D. Ga. July 15, 2013) ("It is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms.") (internal quotations omitted).  The D.C. District Court's decision discards both of these basic principles by holding that (a) despite the Parties' submission to the D.C. District Court, the Parties can never litigate in that court as the other would always prevail on a balance of conveniences analysis; (b) the Parties' submission, "generally and unconditionally, [to] the jurisdiction of the [D.C. District Court] for legal proceedings arising out of or in connection with this Agreement" is meaningless; and (c) the Parties' agreement to "waive[] any right to stay or dismiss any action or proceeding under or in connection with this Agreement brought before the [D.C. District Court] on the basis of forum non-conveniens or improper venue" is also meaningless.

The D.C. District Court erred in allowing the Owners to resurrect through a first to file challenge the very challenges they expressly waived and re-write the express provisions of Section 34.3 of the EPC Agreement. This Court should reverse the D.C. District Court's Order.

## C.    The District Court Erred in Declaring that the Owners Did Not File an Anticipatory and Preemptive Declaratory Judgment Action in the Georgia District Court.

Rather than considering convenience factors, which the Parties had contractually waived, the D.C. District Court should have considered certain special circumstances in its first to file analysis. The most significant factor that militates in favor of the D.C. District Court is that the Owners, on notice that the Contractor intended to file its coercive lawsuit for substantial damages regarding the Regulatory Changes, filed an anticipatory declaratory judgment action in their home forum for the sole purpose of forum shopping and depriving the true plaintiffs of their chosen forum – the D.C. District Court.[1] Motion to Enjoin, Doc. 11, Ex. 10 and Ex. 11. (*See* pp. 8-13, *supra*.) Such an attempted preemptive strike in the form of a declaratory judgment action "should be disregarded in selecting the proper forum if equitable concerns so merit." *Lewis*, 813 F. Supp. at 4; *see also International Painters and Allied Trades Industry Pension Fund v. The*

---

[1] The Contractor contends that the Owners merely "attempted" to file a preemptive declaratory judgment action because as shown above, the Owners ultimately were not successful in filing their action before the Contractor filed its Complaint in the D.C. District Court.

*Painting Co.*, 569 F. Supp. 2d 113, 116 (D.D.C. 2008) ("One equitable consideration is whether the first-filing plaintiff has launched a preemptive strike declaratory judgment action in the face of an impending . . . suit.") (internal quotations omitted); *Thayer/Patricof Educ. Funding, LLC v. Pryor Res. Inc.,* 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (where the defendant filed a declaratory action seven hours after receiving a notice of an intent to file suit, the court stated that "[t]he preemptive and declaratory nature of defendants' [first-filed] action is a strong factor, moreover, counseling against rigid application of the first-filed rule"); *Fed'n Internationale*, 285 F. Supp. 2d at 67 (finding that special circumstances justifying exceptions to the first-filed rule exist when the first-filing plaintiff launched a preemptive strike declaratory judgment action in the face of an impending lawsuit); *Lockheed Martin Corp. v. L-3 Communications Corp.*, 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005) ("Courts have held that one compelling circumstance in favor of departure from the first-filed rule is where one party, on notice of a potential lawsuit, races to the courthouse to file an action in its home forum.").

The Owners filed a declaratory judgment action for the sole purpose of defeating liability in the Contractor's coercive suit. *See* Motion to Enjoin, Doc. 11, pp. 14-16 (comparing the Contractor's coercive Complaint with the Owners' declaratory judgment action). "Courts should not allow parties to use the

Declaratory Judgment Act to engage in forum shopping. Thus, in examining whether to resolve a declaratory judgment action, courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *POM Wonderful LLC v. Fed. Trade Comm'n*, No. 10-1539 (RWR), 2012 WL 4475698, at *4 (D.D.C. Sept. 30, 2012) (internal quotations omitted). "The Declaratory Judgment Act is not a tactical device. '[W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum – a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.'" *Gov't Emps. Ins. Co. v. Rivas,* 573 F. Supp. 2d 12, 15 (D.D.C. 2008) (quoting *Am. South Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004)). *See also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) ("The federal declaratory judgment is not a prize to the winner of the race to the courthouse.") (internal quotations omitted).

The D.C. District Court did not find that this factor weighed in favor of retaining jurisdiction. The D.C. District Court instead found that the Owners had asserted an affirmative breach of contract claim against the Contractor, and

therefore, had not merely filed a preemptive declaratory judgment action in the Georgia District Court. The D.C. District Court erred in its findings.

In an attempt to transform their declaratory judgment action, the Owners tacked on an illusory breach of contract claim regarding their payment of 50% of disputed invoices, notwithstanding that under Sections 8.5(a) and (b) of the EPC Agreement, they are required to make these payments. Thus, there is no breach of contract. The Owners' breach of contract claim is nothing more than creative pleading to disguise the fundamental declaratory nature of their lawsuit. Moreover, even if they had not manufactured a breach of contract claim to mask their declaratory judgment action, pursuant to Section 8.5(b) of the EPC Agreement, the Owners must resolve a dispute regarding payment in accordance with Article 27. The Owners did not abide by the dispute resolution procedures required by Article 27 of the EPC Agreement such as providing written notice of their alleged claim, nor did they commence mediation required by Article 27, further revealing their action is one for declaratory relief, not one in which they are the true plaintiffs. Motion to Enjoin, Doc. 11, Ex. 10.

The simple dispositive fact is that the Contractor's affirmative claims must be resolved *before* any determination can be made regarding the Owners' entitlement to a refund of the 50% of the disputed invoices paid by the Owners. Section 8.5(b) of the Parties' contract provides:

-31-

> Owners may only withhold fifty percent (50%) of the disputed portion of an invoice and such dispute shall be resolved in good faith in accordance with Article 27. **Once the dispute is resolved**, Owners shall pay any additional amount due or Contractor shall refund any amount by which it was overpaid, as applicable, within thirty (30) Days **after the date of the final resolution**, together with interest ….

*Id.*, Ex. 12 (emphasis added).

Consequently, by definition, the Owners' breach of contract claim is entirely derivative. The D.C. District Court's determination of the Contractor's affirmative claims is a contractual and legal prerequisite to the Owners' pursuit of their alleged breach of contract claim against the Contractor.

The D.C. District Court should have granted the Contractor's Motion to Enjoin and denied the Owners' Motion to Dismiss based alone on the Contractor's status as the "true plaintiffs" and the Owners' attempt to file a preemptive declaratory judgment action in order to forum shop. This Court should reverse the District Court's declaration on this point.

**D.     The District Court Erred in Refusing to Address Whether the Contractor or the Owners Were the First to File A *Bona Fide* Lawsuit.**

The Owners filed a declaratory judgment action for the clear purpose of forum shopping. Therefore, the D.C. District Court's inquiry into which Party filed the first *bona fide* lawsuit should have stopped there. The Contractor clearly filed the first *bona fide* lawsuit. However, if the Owners' Complaint in the

-32-

Georgia District Court could, assuming *arguendo*, somehow be deemed a legitimate cause of action, rather than a declaratory judgment action for the improper purpose of forum shopping, the D.C. District Court erred in refusing to find that the Contractor was the first to file its Complaint.

As seen from the facts above, the D.C. District Court should have determined that the Contractor was the first to file its Complaint. The Contractor filed its Complaint electronically in the D.C. District Court precisely at 8:00:00 p.m. on November 1, 2012, according to the U.S. Naval Observatory Master Clock, and has a computer generated document showing that the Complaint was filed between 8:00:00 and 8:00:01 p.m. Motion to Enjoin, Doc. 11, Ex. 9, p. 2, Ex. 10, pp. 1-2, and Ex. 11.

The Owners, in an apparent, yet failed, attempt to gain a time advantage, purportedly filed their Complaint for declaratory relief by hand and after hours with the Deputy Clerk for the Georgia District Court on November 1, 2012. The Owners are thus faced with having only their word and a hand-stamped complaint with a handwritten notation showing 8:00 p.m. on November 1, 2012 as the date and time for filing, as support for their claim that they were the first to file. *Id.*, Ex. 1, and Ex. 2, p. 32.

The evidence thus supports the Contractor's contention that its Complaint is the first-filed complaint. Accordingly, the D.C. District Court should have found

that it was the court of the first-filed action and that it, rather than the Georgia District Court, should retain jurisdiction over the matter. The D.C. District Court, however, refused even to consider the evidence regarding whether the Contractor or the Owners were the first to file their respective lawsuits. Instead, the D.C. District Court bypassed this question, and based its decision entirely on "equitable considerations" the Parties had contractually waived. The D.C. District Court stated, "The Court need not, and in the interest of judicial economy, shall not reach this issue [of which lawsuit was filed first]. This is because the Court finds, in an exercise of its discretion, that even if Plaintiffs were the first to file suit, equitable considerations weigh overwhelmingly in support of resolution of the parties' dispute by the Southern District of Georgia." Memorandum Opinion, Doc. 33, at p. 7. In doing so, the district court wholly ignored the Parties' venue agreement as memorialized in Section 34.3 of the EPC Agreement.

The Court should reverse the D.C. District Court's Order and direct the court to retain jurisdiction as the Contractor was the first to file its Complaint.

## <u>CONCLUSION</u>

The D.C. District Court erred in denying the Contractor's Motion to Enjoin and in granting the Owners' Motion to Dismiss. The D.C. District Court is the court of the first-filed action. It is also the only venue to which the Parties explicitly agreed in the EPC Agreement and for which they waived *forum non-*

*conveniens* and improper venue challenges.  Thus, the D.C. District Court should not have considered the convenience of the Parties in its first to file analysis but instead should have found that the Contractor is the true plaintiff and the first to file its affirmative action.  The D.C. District Court should have granted the Contractor's Motion to Enjoin and denied the Owners' Motion to Dismiss.  This Court should reverse the D.C. District Court's Order.

DATED:  February 18, 2014.            Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

By:   /s/ David. C. Smith_____
David C. Smith, Esq.
D.C. Bar No. 998932
607 14th Street, NW, Suite 900
Washington, DC  20005-2018
Telephone:  202 508 5800
Facsimile:  202 508 5858
Email: dcsmith@kilpatricktownsend.com

- and –

By:   /s/ Brian G. Corgan
Brian G. Corgan, Esq.
D.C. Court of Appeals Bar Number 55054
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309
Telephone:  404-815-6217
Facsimile:  404.815.6555
Email:
BCorgan@KilpatrickTownsend.com

COUNSEL FOR APPELLANT
WESTINGHOUSE ELECTRIC
COMPANY LLC

**WATT, TIEDER, HOFFAR &
FITZGERALD, L.L.P.**


By:   /s/ Shelly L. Ewald
Shelly L. Ewald, Esq.
D.C. Court of Appeals Bar Number 55095
8405 Greensboro Drive, Suite 100
McLean, Virginia  22102
Telephone:  703-749-1000
Facsimile:  703-893-8029
Email:  sewald@wthf.com

COUNSEL FOR PLAINTIFF
STONE & WEBSTER, INC.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(b) because this brief contains 8,213 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word using 14-point Times New Roman font.

 /s/ David C. Smith
David C. Smith

Attorney for Appellant
Westinghouse Electric Company LLC

Dated:  February 18, 2014.

## <u>CERTIFICATE OF SERVICE</u>

I, David C. Smith, hereby certify that on February 18, 2014, I electronically filed the foregoing **APPELLANTS' BRIEF** with the clerk of the United States Court of Appeals for the District of Columbia Circuit, using the CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

By: <u>/s/ David C. Smith</u>
David C. Smith
D.C. Bar No. 998932
607 14th St., NW, Suite 900
Washington, D.C. 20005-2018
Tel:  202 508 5800
Fac:  202 508 5858
dcsmith@kilpatricktownsend.com

Counsel for Appellant
Westinghouse Electric Company LLC